UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMY S. CHIEFTAIN,

      Plaintiff,                                Case No. 1:04-cv-498

      vs.                                      Watson, J.
                                          Black, M.J.
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKS PENSION FUND, *et al.*,

      Defendants.

**REPORT AND RECOMMENDATION**[1] **THAT DEFENDANTS' MOTIONS TO DISMISS (Docs. 5, 6 and 7) BE GRANTED AND THIS CASE CLOSED**

Plaintiff, Tammy S. Chieftain, initiated this action on August 3, 2004 by filing her complaint against defendants International Brotherhood of Electrical Workers' Pension Fund ("IBEW"), the International Brotherhood of Electrical Workers' Local 212 Pension Fund ("Pension Plan"), International Brotherhood of Electrical Workers' Local 212 Health and Welfare Fund ("H&W Plan"), International Brotherhood of Electrical Workers' Local 212 Supplemental Unemployment Benefits Fund ("SUB Fund") and Tammy R. Chieftain.  (Doc. 1).

Plaintiff is seeking judgment from the Court declaring that she is entitled to benefits payable by IBEW and IBEW Local 212 as a result of the death of Michael E. Chieftan.  Defendants International Brotherhood of Electrical Workers' Local 212 Pension Fund, International Brotherhood of Electrical Workers' Local 212 Health and

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Welfare Fund, and International Brotherhood of Electrical Workers' Local 212 Supplemental Unemployment Benefits Fund have each filed motions to dismiss Plaintiff's complaint. (*See* docs. 5-7).

## I.

Plaintiff, Tammy S. Chieftain, is the mother of Winter James Chieftain, born February 21, 1991. Plaintiff's former husband and the father of Winter J. Chieftain, Michael E. Chieftain, was killed in an accident on June 6, 2004. Michael E. Chieftain was a member of the International Brotherhood of Electrical Worker's Local 212 and a participant in all of the Plans named as defendants in this action.

At the time of his death, Michael E. Chieftain was required to pay child support regarding Winter J. Chieftain pursuant to a state court divorce decree. Michael E. Chieftain was also survived by an adult son, Michael Chieftain, II, and by a spouse, defendant Tammy R. Chieftain, who was not the mother of either of children. The Divorce Decree between Plaintiff and Michael E. Chieftain contained the following language:

> IT IS FURTHER ORDERED, that Plaintiff and Defendant shall each retain any interest they may have in Life Insurance. Any life insurance available to Defendant through his employment shall be maintained with the parties' minor child as beneficiary for so long as the Defendant is obligated to support Winter J. Chieftain. However, should Defendant elect, he shall also be permitted to include Michael Chieftain, II as an equal beneficiary on said policy. No other person shall be named a beneficiary.

(Doc. 10).

Plaintiff maintains that the divorce decree constitutes a Qualified Domestic Relations Order (a "QDRO"), as defined by 29 U.S.C. § 1056, and, as such, Michael E. Chieftain is an ERISA plan beneficiary. Plaintiff's complaint further alleges that Michael E. Chieftain did not comply with the terms of the Divorce Decree, and, as a result, the benefits payable by reason of his death are in danger of not being paid for the benefit of Winter J. Chieftain, as ordered by the divorce court.

Thus, Plaintiff asserts that as mother, next friend and legal guardian of Winter J. Chieftain, she is entitled to have this Court impose a constructive trust on the benefits payable by the Defendants IBEW and Local 212 on account of the accidental death of Michael E. Chieftain. Plaintiff's complaint further demands that the Court enter a declaratory judgment that as mother, next friend, and legal guardian of Winter J. Chieftain, Plaintiff is entitled to the said benefits.

Defendants, however, assert that Plaintiff's complaint fails to state a claim upon which relief can be granted by this Court because the Plans do not provide life insurance. Defendants further maintain that the divorce decree Plaintiff relies on makes no mention of incorporating into the decree any qualified domestic relations order for the purpose of child support and, therefore, does not constitute a qualified domestic relations order as that term is defined by federal or state law. The undersigned agrees, and for the reasons that follow, recommends that Defendants' motions to dismiss be granted and this case be closed.

## II.

In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the factual allegations in the complaint must be taken as true and construed in a light most favorable to plaintiff. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *See also Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994).

## III.

ERISA section 206(d)(1) requires that "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). In *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415 (6th Cir.1997), the Sixth Circuit recognized that when an insurance policy is part of an ERISA plan, ERISA generally trumps state law with respect to the designation of beneficiaries. *Metropolitan Life Ins. Co. v. Cronenwett*, 162 F.Supp.2d 889, 895 (S.D.Ohio 2001) (citing *Marsh,* 119 F.3d at 420). ERISA requires a plan administrator to award insurance benefits "in accordance with the documents and instruments governing the plan." *Id.* Thus, generally, when a state divorce decree awards insurance benefits in a manner that conflicts with the terms of ERISA plan documents, the divorce decree ordinarily is preempted by federal law.

Notably, however, the preemption principle discussed above includes an exception which lies at the heart of the present dispute. *Metropolitan Life Ins. Co. v. Cronenwett*, 162 F.Supp.2d 889, 895 (S.D.Ohio 2001).

In 1984, ERISA was amended to provide that the prohibition on alienation and assignment of pension benefits "shall not apply if the order is determined to be a qualified domestic relations order." *Marsh*, 119 F.3d at 419 (citing 29 U.S.C. § 1056(d)(3)(A)).

A "qualified domestic relations order" (a "QDRO") is defined as a domestic relations order that "assigned to an alternate payee the right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan." *Metropolitan Life Ins. Co. v. March*, 119 F.3d 415, 419 (6th Cir. 2000) (quoting 29 U.S.C. §1056(d)(3)(B)(i)(I)).

In *Marsh,* the Sixth Circuit recognized that 29 U.S.C. § 1144(b)(7) excepts a divorce decree from ERISA's preemptive reach *if* the divorce decree constitutes a "qualified domestic relations order" (a "QDRO"). *Marsh,* 119 F.3d at 421.

Under ERISA, the phrase "domestic relations order" means: any judgment, decree or order (including approval of a property settlement) which --

> (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant; and
> (II) is made pursuant to a State domestic relations law (including a community property law).

*Id.* (quoting 29 U.S.C. § 1056(d)(3)(B)).

Thus, a "domestic relations order" is "qualified" under ERISA (*i.e.,* it constitutes a QDRO) only if it "clearly specifies" the following:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) the number of payments or period to which such order applies, and
> (iv) each plan to which such order applies.

*Id.* at 421-422 (quoting 29 U.S.C. § 1056(d)(3)(C)).

A.  *The Language of the Divorce Decree Herein Does <u>Not</u> Create a Qualified Domestic Relation Order*

Plaintiff argues that the divorce decree at issue has similar language and is comparable to the divorce decree found in *Marsh*.

*Marsh* involved competing claims between a widow, named as the beneficiary of a life insurance policy, and the children from the decedent's first marriage, which children sought to claim a percentage of the life insurance proceeds under a divorce decree. *Id*. at 416-17.   The divorce decree in *Marsh* expressly stated:

> IT IS FURTHER ORDERED AND ADJUDGED that all rights of either party in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the other in which he or she was named or designated as beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective shall hereupon become and be payable to the estate of the owner of such policy or such named beneficiary as he or she shall affirmatively designate *except that the minor children of the parties shall be named as beneficiaries to the extent of two thirds (2/3) of the proceeds of Plaintiff's insurance through Metropolitan Life Insurance Company, maintained at his place of employment.*  Under a section entitled "Custody of Children," the "minor children of the parties" are identified as

> "DANA LYN MARSH, born August 24, 1965; and JAMES R. MARSH, III., born December 7, 1967."

*Marsh*, 119 F.3d at 417 (emphasis added).

Thus, the decree in *Marsh* specifically identified the employee's life insurance policy, the percentage paid to each alternative payee, and the names of the alternative payees. Moreover, the Court stated that "[w]hile the divorce decree did not specify where deceased was employed, the decree identified the policy as one through Metropolitan Life Insurance Company maintained at his place of employment. This permitted identification of the plan and is not ambiguous." *Id*. at 422. Thus, the Court found that the divorce decree was specific enough to substantially comply with ERISA's requirements. *Id.*

Here, the divorce decree at issue merely states that "any life insurance available to the Defendant through his employment shall be maintained with the parties' minor child as beneficiary for so long as the Defendant is obligated to support Winter J. Chieftain." (Doc. 10). Thus, the divorce decree does not state the name and the last known mailing address (if any) of the participant, nor the name and mailing address of each alternate payee covered by the order, nor the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, nor the manner in which such amount or percentage is to be determined, nor the number of payments or period to which such order applies. Importantly, the divorce decree does not identify each plan to which such order applies nor name the life insurance policy, if any, covered by the plan(s).

Accordingly, Plaintiff's reliance on *Marsh* is misplaced because the language in the divorce decree at issue does not contain the required information outlined in 29 U.S.C. § 1056(d)(3)(C).  The fatal defect in the divorce decree in this case is that it "fails to mention in any limiting way the plan to which such order applies."  *Metropolitan Life Ins. Co. v. Mulligan*, 210 F.Supp.2d 894, 898 (E.D. Mich.2002); *see also Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 677 -678 (6th Cir. 2000) (domestic relations order did not comply with the requirements of Section 1056(d)(3)(C) because "[o]ther than naming the parties . .  the order did not provide *any* of the required information, [plan participant's] address, the amount or percentage of the participant's benefits to be paid by the plan, the number of payments or durational period of the order, or the name of the plan.").

Although, according to *Marsh,* the judgment need not explicitly state, for example, that it refers to a specific group policy number, it must at least contain some information to permit identification of the plan to which it applies and to avoid ambiguity.  *Mulligan*, 210 F.Supp.2d at 898.  Here, as noted above, the divorce decree refers to "any life insurance available to the Defendant through his employment."  Such blanket language cannot be reconciled with the statutory requirement of clearly specifying each plan to which such order applies.  *Id*.  Accordingly, because the divorce decree fails to meet the QDRO statutory requirements, the preemption provisions of section 1144(a) remain effective, and the beneficiary designation in the policy controls.

B.  *Even if the Language of the Divorce Decree Were Specific Enough to Satisfy the Requirements of 29 U.S.C. § 1056(d)(3)(C), None of the Plans Sued by Plaintiff Provide Life Insurance Benefits*

29 U.S.C. § 1056(d)(3)(D) further provides that "[a] domestic relations order meets the requirements of this subparagraph only if such order does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan" and "does not require the plan to provide increased benefits." *Id.* at § 1056(d)(3)(D)(i) and (ii).  Thus, "[a] domestic decree that would have the effect of increasing the liability of the Plan over what has been provided in the Plan. . . is not a QDRO." *Samaroo v. Samaroo*, 193 F.3d 185, 189-190 (3d Cir. 1999).

Here, Plaintiff has sued four distinct Benefit Plans – two Pension Plans, a Health and Welfare Plan, and a SUB fund.  However, as noted by the Plan Administrator for each Plan, none of these Plans includes life insurance benefits.  *See* Docs. 5-7, Ex 1, Affidavit of Rita McLucas ("McLucas Aff.").

   *i. IBEW Local Union No. 212 Pension Trust Fund*

IBEW Local Union No. 212 Pension Trust Fund ("Pension Plan") "is an employee pension plan as defined by ERISA, 29 U.S.C. § 1002(2)." Doc. 5, Ex. 1, McLucas Aff. ¶ 3. Section 4.4 (a) provides that the Trustees shall pay to the participants designated beneficiary a lump sum death benefit in an amount equal to participants earned contributions as of the date of the death in the event said participant is not vested in the Pension Plan. *Id.* at ¶ 6.  As of the date of death, Michael Chieftain had only earned four

years of credited service.  *Id.* at ¶ 7.  The Pension Plan requires five years of credited service to be vested.  The sole designated beneficiary for this account was Tammy R. Chieftan. *Id.* at ¶ 8.  The Pension Plan does not provide any life insurance benefits.  *Id.*

  ii.  *IBEW Local Union No. 212 Supplemental Unemployment Benefit Trust Fund*

IBEW Local Union No. 212 Supplemental Unemployment Benefit Trust Fund (SUB Plan) is a multi-employer, collectively bargained, and self-funded supplemental unemployment compensation plan, providing supplemental unemployment compensation to eligible SUB Plan participants who become involuntarily unemployed.  Doc. 6, Ex. 1, McLucas Aff. ¶ 2.  The SUB Plan does not provide any life insurance benefits.  *Id.* at ¶ 4.  However, Section 3.5 (A) of the SUB Plan provides that the Trustees shall pay to the participant's designated beneficiary a lump sum supplementary death benefit in an amount equal to participant's individual credit account balance as of the date of death.  *Id.* at ¶ 6.  Here, the sole designated beneficiary for this account was Tammy R. Chieftan.  *Id.* at ¶ 6

  iii.  *IBEW Local Union No. 212 Health and Welfare Trust Fund*

IBEW Local Union No. 212 Health and Welfare Trust Fund ("H&W Plan") is a multi-employer, collectively bargained, and self-funded health care plan, providing medical benefits for eligible participants.  Doc. 7, Ex. 1, McLucas Aff. ¶ 2.  The H&W Plan does not provide any life insurance or death benefits.  *Id.* at ¶ 4.

Despite this evidence and the express language of the Plans, Plaintiff argues that the benefits contracts between Mr. Chieftan and Defendants are similar to life insurance and that the Court should afford a liberal interpretation to the term "life insurance" as used in

the divorce decree. However, such a liberal interpretation would require the Plan(s) to provide a type or form of benefit which is not provided under the Plan(s), and, therefore, would have the effect of increasing the liability of the Plan(s) which is strictly prohibited by 29 U.S.C. § 1056(d)(3)(D).

Accordingly, for the forgoing reasons, the undersigned concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted. **IT IS THEREFORE RECOMMENDED THAT** Defendants' motions to dismiss (docs. 5, 6 & 7) be **GRANTED;** and that defendants International Brotherhood of Electrical Workers' Local 212 Pension Fund, International Brotherhood of Electrical Workers' Local 212 Health and Welfare Fund, and International Brotherhood of Electrical Workers' Local 212 Supplemental Unemployment Benefits Fund be **TERMINATED** as party defendants in this action.

Moreover, although defendants Tammy R. Chieftain and International Brotherhood of Electrical Workers Pension Fund have not sought dismissal of the complaint, it is manifest that Plaintiff's claims against them must fail for the same reasons that she cannot succeed against International Brotherhood of Electrical Workers' Local 212 Pension Fund, International Brotherhood of Electrical Workers' Local 212 Health and Welfare Fund, and International Brotherhood of Electrical Workers' Local 212 Supplemental Unemployment Benefits Fund. Under these circumstances, "[a] District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such

defendants are in a position similar to that of the moving defendants." *Silverton v. Department of the Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981); *see also Muhammad v. State of Louisiana*, 2000 WL 1511181, at *4, 6 (E.D. La. Oct. 6, 2000); *Lesher v. Lavrich*, 632 F.Supp. 77, 84 (N.D. Ohio 1984) (citing *Silverton*).

**IT IS THEREFORE FURTHER RECOMMENDED THAT** the complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that the action be **TERMINATED** in toto.


Date:   September 1, 2005                                  s/ Timothy S. Black
                                                           Timothy S. Black
                                                           United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMY S. CHIEFTAIN,

      Plaintiff,                                      Case No. 1:04-cv-498

     vs.                                                 Watson, J.
                                                       Black, M.J.
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKS PENSION FUND, *et al.*,

      Defendants.

## NOTICE

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).